# The Lesure Lumber Company v. The Mutual Fire Insurance Company of New York, Appellant

**Insurance:** PROPORTIONATE LIABILITY. A provision in an insurance
policy on three separate yards of lumber, that the company shall
not be liable for a greater proportion of any loss than the amount
insured by it shall bear to the entire insurance on "such property."
relieves the company from liability for a greater proportion of the
loss from fire in two of the yards than the amount of its policy
bears to the total insurance on the property destroyed, but no
more, although there are separate policies on the uninsured yard.

**Jurisdiction:** SERVICE OF NOTICE ON ADJUSTER. Jurisdiction over a
foreign insurance company not authorized to do business in the
state is not acquired by service on a non-resident adjusting agent,
not employed in the general management of the business, or in
any office or agency in the state, made while he was temporarily
within the state to investigate the loss to begin suit upon which
said notice is served.

SPECIAL APPEARANCE. A special appearance by a foreign insurance
company to object to the service of notice on its non-resident
adjusting agent while temporarily in the state, is sufficient to con-
fer jurisdiction over it. since Code, section 2626, sub-section 3, pro-
vides that, if a special appearance to object to the service is made,
no other notice is necessary.

**Action Against Insurer:** PREMATURE SUIT. An action is not com-
menced, within the meaning of the general statute of limitations
(Code, section 2532), by delivering the original notice for service
to one who was not a sheriff or officer, and who did not serve it
on any person upon whom service was authorized.

DELIVERY OF NOTICE TO ONE NOT A SHERIFF. Where there was no
proper service of an original notice in an action against a foreign
insurance company, the appearance of defendant will be consid-
ered as the commencement of the action, for the purpose of deter-
mining whether it was premature.

APPRAISEMENT: *Condition precedent to suit.* Provisions in a pol-
icy that an appraisal by arbitrators shall be made if there is a dis-
agreement as to the loss; that the loss shall not be payable until
sixty days after notice and satisfactory proofs of loss have been
given, "including an award by appraisers when the appraisal shall
be required;" and that no action on the policy can be maintained
without "a full compliance by the insured with all the foregoing

requirements,"—do not make an appraisal a condition precedent to the right to sue, where the company makes no demand therefor.

**Appeal:** FINAL AND INTERLOCUTORY JUDGMENTS: *Review.* Where there was an interlocutory judgment for costs against defendant, on a plea in abatement, and also a final judgment against it on the merits, a notice of appeal served after the expiration of the time for appealing from the interlocutory judgment, conceding it to be appealable, which stated that an appeal had been taken from "the judgment," refers to the final judgment; and the interlocutory judgment may be reviewed on that appeal

*Appeal from Dubuque District Court.*—Hon. J. L. Husted, Judge.

FRIDAY, APRIL 9, 1897

ACTION at law to recover an amount alleged to be due on a fire insurance policy. After the evidence had been submitted, the court directed a verdict for the plaintiff, and judgment was rendered accordingly. The defendant appeals.—*Affirmed*

*Myron H. Beach* and *Wm. Graham* for appellant.

*Henderson, Hurd, Lenehan & Kiesel* for appellee

ROBINSON, J.—On the twelfth day of March, 1894, the defendant issued to the plaintiff a policy insuring it for the term of one year against loss or damage by fire, to the amount of ten thousand dollars, on its stock of lumber in certain yards in the city of Dubuque. On the ninth day of June, in the same year, lumber to the value of seventy-four thousand, four hundred and seventy-eight dollars and fifty-five cents, in two of the yards, was destroyed by fire. The total insurance on the lumber destroyed was sixty-eight thousand five hundred dollars. The verdict and judgment were for the full amount of the policy, with interest.

I.   The answer of the defendant pleaded matter in abatement, and also matter in bar of this action. On the fifth day of April, 1895, the issues raised by the plea in abatement were submitted to a jury, and determined adversely to the defendant; and thereupon judgment was rendered against it for costs, and the case was continued.   A trial on the merits was afterwards had, which resulted in a judgment in favor of the plaintiff on the eleventh day of October, 1895, for the amount of its claim.   The body of the notice of appeal served in this case is as follows: "You are hereby notified that the defendant in the above-entitled cause, the Mutual Fire Insurance Company of New York, has appealed from the judgment of the district court of Iowa, in the above-entitled cause, to the supreme court of Iowa."   The plaintiff has moved to dismiss the appeal on the ground that it "does not show from what part of the proceedings in said case said appeal was taken, and because it does not show from which of the two judgments against the defendant in this case the appeal was taken."   The notice of appeal was served on the twelfth day of February, 1896, more than six months after the judgment on the plea in abatement was rendered, and too late for an appeal, directly, from that judgment to be taken if it be conceded that it was appealable.   It was interlocutory, rendered upon issues which did not embrace the real controversy between the parties.   The final judgment was the one for which the action was instituted, and that which the pleading in abatement and the other defenses set out in the answer of the defendant were designed to prevent.   The interlocutory judgment did not affect the defense, so far as it went to the merits of the case.   Under the circumstances disclosed by the record, there can be no doubt that the notice of appeal referred to the final judgment,

and the plaintiff could not have been in doubt as to that fact. When an appeal is taken from a judgment, in the absence of a showing to the contrary, it will be presumed to be from the final judgment, if that has been rendered. This case differs from that of *Weiser v. Day*, 77 Iowa, 26 (41 N. W. Rep. 476), in which the notice stated that the appeal was from a decision which was not in any manner identified, not from a judgment. The plaintiff asks, if the appeal is not dismissed, that so much of the case as involved the interlocutory judgment and rulings made prior thereto be dismissed, because the appeal was taken more than six months after that judgment was rendered. It is the policy of the law to discourage useless appeals, and it is the authorized and general practice, on appeals from final judgments, to review interlocutory orders and judgments, although made or rendered more than six months before the taking of the appeal. *Palmer v. Rogers*, 70 Iowa, 382 (30 N. W. Rep. 645); *Jones v. Railroad Co.*, 36 Iowa, 72. We do not find anything in this case to make it an exception to the general rule, and the motion of the plaintiff to dismiss is denied.

II. On the sixteenth day of August, 1894, an original notice, directed to the defendant, was served upon John Howley. He was the adjusting agent of the defendant, and a non-resident, but was served while he was temporarily within the state. Four days later the petition in this case was filed. The defendant is a corporation of the state of New York, and had an agency in the city of Chicago, where it was authorized to do business; but it had not obtained permission, and was not authorized, to do business within this state. The policy in suit was issued on the order of D. A. Henderson, a local insurance agent of Dubuque, but is claimed by the defendant not to have been issued in this state. On

the first day of November, 1894, the defendant filed a
petition and bond for the removal of the cause to the
federal court. On the eighteenth day of the next
December the petition was denied by the district
court. On the same day the plaintiff filed an amended
petition, in which an attachment was asked, and a
writ was issued, under which the Second National
Bank of Dubuque was garnished. The garnishee
answered that it held a deposit of six thousand seven
hundred and ninety dollars and eighty cents made by
the defendant as a tender to the plaintiff, which the
latter had refused. On the same day the plaintiff
also filed a supplemental petition, in which it alleged
that, since the filing of the petition, more than ninety,
days had elapsed since the giving of the notice and
proof of loss referred to in the petition. On the
seventh day of January, 1895, the defendant filed an
answer which pleaded in abatement of the action that
the court did not have jurisdiction of defendant or of,
its property, for the reason that it was a corporation
organized and existing under and by virtue of the
laws of the state of New York; that it had no legal
existence in this state; that it had never applied for
permission to do business in this state, nor had it ever
had an agent therein; that it had never attempted to
comply with the laws of this state relating to foreign
insurance companies, and had not transacted any
insurance business in the state; and that Howley was
not an agent of the defendant, but merely an adjuster,
who resided outside of the state, and went to Dubuque
for the sole purpose of ascertaining the loss by fire to
the property covered by the policy. The answer asked
that the action be dismissed. On the twenty-fifth day
of the month the defendant filed a motion to strike from
the files the amended petition and the supplemental
petition, but the motion was overruled. On the fifth
day of April, 1895, the defendant filed what it calls an

"amendment" to its plea in abatement, but which contains its answer on the merits of the case. It is claimed that jurisdiction of the defendant was not acquired by service of the original notice on Howley, and we think that is true. He was not employed in the general management of the business of the defendant, nor in any office or agency which belonged to it within the state. But an action may be brought against an insurance company in any county in which the loss insured against, for which a recovery is sought, occurred. Code, section 2584. And an action aided by attachment may be brought against a non-resident of this state in any county of the state where any part of the property sought to be attached is found. Code, section 2580. It is clear that the district court had jurisdiction of the subject-matter of the action, and it is also clear that, under the statute of this state and the decisions of this court, the appearance of the defendant, although special, to object to the service of the notice, was sufficient to confer jurisdiction upon the district court. Code, section 2626, sub-section 3; *Johnson v. Tostevin*, 60 Iowa, 47 (14 N. W. Rep. 95); *McFarland v. Lowry*, 40 Iowa, 468; *Rahn v. Greer*, 37 Iowa, 630; *Post v. Brownell*, 36 Iowa, 498; *McKnight v. McCullough*, 21 Iowa, 111. It follows that the district court acquired jurisdiction of both the defendant and the subject-matter of the action.

III. It is said, however, that the action was prematurely brought. Section 3, of chapter 211, of the Acts of the Eighteenth General Assembly, makes it necessary, in order to maintain an action for loss covered by a policy of insurance, for the insured to prove that he has given the insurer notice in writing of the loss, accompanied by an affidavit stating the facts as to how the loss occurred, so far as they are within the knowledge of the insured, and the extent of the loss. The notice must be given

within sixty days from the time the loss occurred.
The statute further provides that "no action shall be
begun within ninety days after the notice of such loss
has been given." The notice required by the statute
was received by the defendant on the fifth day of July,
1894. If the action was commenced, within the mean-
ing of the statute, when the original notice was served
on Howley, or when the petition was filed, and is gov-
erned by the statute, then the action was commenced
prematurely. *Worley v. Insurance Co.*, 91 Iowa, 154
(59 N. W. Rep. 16); *Taylor v. Insurance Co.*, 83 Iowa,
404 (49 N. W. Rep. 994); *Quinn v. Insurance Co.*, 71
Iowa, 615 (33 N. W. Rep. 130). It is contended that
the action was not commenced when the notice was
served, nor when the petition was filed. For the pur-
poses of the general statute of limitations, an action
is commenced when the original notice is delivered to
the sheriff of the proper county with the intent that
it be served immediately, or when it is actually served
by another person. Code, section 2532. The
action was not commenced, within the meaning
of that section, by the delivery for service
of the original notice, for the reason that it was not
delivered to the sheriff, but to a person who was not
an officer, and, as he did not serve it upon any person
upon whom service was authorized, what he did was
of no effect, and a nullity. *Insurance Co. v. Granger*,
62 Iowa, 273 (17 N. W. Rep. 504). Section 2599 of the
Code refers to the method of commencing actions,
and provides that "actions in a court of record shall
be commenced by serving the defendant with a notice"
(stating what it should contain); but that section does
not apply in this case, for the reason that no service
of a notice recognized by the law was made. In the
case of *Sweatt v. Faville*, 23 Iowa, 322, instituted to
procure an injunction, it was held that the action was
commenced, at least, when the temporary writ of

injunction was served.  Service of that was made
before the right of action was barred by the statute,
and the action was held to be commenced in time,
although the original notice was not served until
later, and when the action would have been barred if
the time for the accruing of the right of action was
correctly assumed, had it not been for the serving of
the writ.  There are other cases which for some pur-
poses are regarded as commenced by the filing of the
petition.  See Code, section 2628; *Wilson v. McElroy*,
83 Iowa, 594 (50 N. W. Rep. 55); *Hargan v. Burch*, 8
Iowa, 310; *Elliott v. Stevens*, 10 Iowa, 418; *Reed v.
Chubb*, 9 Iowa, 180.  The case of *Collins v. Bane*,
34 Iowa, 386, involved the application of the
statute of limitations.  The petition therein was
filed several months before the original notice
was deliveerd to the sheriff for service, but it
was held that the action was not pending or com-
menced until the delivery of the notice.  Our
conclusion, drawn from the record submitted to
us, and the statutes and authorities cited, is that as
the original notice was not delivered to the sheriff for
service, and since the service made was without legal
effect, the case must be treated as though there had been
no service of, nor attempt to serve, an original notice;
that the mere filing of the petition accomplished
nothing and was without any effect whatever, until
the defendant appeared thereto; that when that
appearance was made, and not before, the action was
begun, within the meaning of the statute in question;
and, as the appearance was not made until after
ninety days had elapsed from the giving of the notice
of loss, that the action was not prematurely brought.

IV.  The policy provides that: "In the event of
disagreement as to the amount of loss, the same shall
*  *  *  be ascertained by two competent and dis-
interested appraisers, the insured and this company

each selecting one, and the two so chosen shall first select a competent and disinterested umpire; 7 * * * and the award in writing of any two shall determine the amount of such loss * * *" The appellant claims that the parties to the policy did not agree as to the amount of loss, and that an appraisement, or a demand for an appraisement by the assured and a refusal by the company, was a condition precedent to the right to maintain an action. In *Gere v. Insurance Co.*, 67 Iowa, 273 (23 N. W. Rep. 137), and (25 N. W. Rep. 159), a stipulation for an arbitration "at the request of either party" was held not to require an arbitration as a condition precedent to a right to sue; and the same was held in *Davis v. Insurance Co.*, 96 Iowa, 70 (64 N. W. Rep. 687), of a stipulation providing for an arbitration "at the written request of either party." In neither case was there any request for arbitration. Something was said by way of argument, in the case last cited, as to the effect of eliminating the words there used, which we have quoted, but the effect which that change would have had was not involved in that case. The rule which governs stipulations for arbitration in such cases as this, is stated in *Hamilton v. Insurance Co.*, 137 U. S. 370 (11 Sup. Ct. Rep. 133), as follows: "A provision in a contract for the payment of money upon a contingency that the amount to be paid shall be submitted to arbitrators, whose award shall be final as to that amount, but shall not determine the general question of liability, is undoubtedly valid. If the contract further provides that no action upon it shall be maintained until after such award, then * * * the award is a condition precedent to the right of action. But when no such condition is expressed in the contract, or necessarily to be implied from its terms, it is equally well settled that the agreement for submitting the amount to arbitration is collateral and independent, and that a breach of this agreement, while it will

support a separate action, cannot be pleaded in bar to an action on the principal contract." That rule finds support in *Insurance Co. v. Pulver*, 126 Ill. 329 (18 N. E. Rep. 807); *Canfield v. Insurance Co.*, 55 Wis. 422 (13 N. W. Rep. 252); *Reed v. Insurance Co.*, 138 Mass. 576; *Seward v. City of Rochester*, 109 N. Y. 167 (16 N. E. Rep. 348). We find nothing inconsistent with it in the case of *Chippewa Lumber Co. v. Phenix Ins. Co.*(Mich) 44 N. W. Rep. 1055, and *Mosness v. Insurance Co.* (Minn) 52 N. W. Rep. 932, cited by appellant. The policy in suit does not, in terms nor by necessary implication, make an arbitration a condition precedent to the bringing of an action. If a loss occur for which a company is liable, it "shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss" shall have been received by the company. An additional provision is that "the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when the appraisal has been required." A further provision is that "no suit or action on this policy for the recovery of any claim shall be sustained in any court of law or equity until after full compliance by the insured with all the foregoing requirements, * * *." An appraisal was not asked by either party to the policy. It was not, therefore, "required," within the meaning of the provisions quoted; and as there is no provision in the policy referring to it, excepting those quoted, it did not become a condition precedent to the bringing of this action.

V. The next and last question we are required to determine involves the real controversy of the parties to this action, and relates to the proper interpretation of a provision of the policy which is in words as follows: "This company shall not be liable under this

policy for a greater proportion of any loss on the described property   *   *   *   than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property.   *   *   *" The policy in suit, as already stated, was for the sum of ten thousand dollars, and covered all the lumber in three yards owned by the plaintiff, and referred to as the "north yard," "south yard," and "yard north of Seventh street." The entire insurance on the lumber in the three yards amounted to one hundred and fifteen thousand dollars. Policies to the amount of fourteen thousand five hundred dollars called "blanket policies," including that in suit, covered all the lumber in the three yards. In addition, there was specific insurance to the amount of fifty-four thousand dollars on the lumber in the north yard, and to the amount of forty-six thousand five hundred dollars on the lumber in the south yard. The lumber in the yard last named was uninjured. The loss sustained in the other two yards was seventy-four thousand four hundred and seventy-eight dollars and eighty-five cents, while the blanket and specific insurance upon the property lost was but sixty-eight thousand five hundred dollars. The defendant contends that its liability for the loss is as ten thousand dollars, the amount of its policy, is to one hundred and fifteen thousand dollars, the total amount of the insurance on the three yards, or for two-twenty-thirds of seventy-four thousand, four hundred and seventy-eight dollars and eighty-five cents. It tendered to the plaintiff that amount, six thousand, four hundred and seventy-six dollars and forty-two cents, with interest from the termination of sixty days from the notice and proof of loss to the date of the tender. The plaintiff contends that this is not a case for the application of any rule of apportionment; that, as the value of the property lost was

greater than the insurance upon it, the defendant is liable for the full amount of its policy and interest,— and the district court so held. The policy was designed to secure the plaintiff against loss by fire in any or all of the yards to the full amount of the policy. It covered all of the property which was destroyed, and if it is paid in full, it will not fully compensate the plaintiff for the loss sustained. In ascertaining the amount of insurance, for the purposes of an apportionment, it would be just, in the absence of a stipulation to the contrary, to consider only the insurance on the property injured or destroyed; and it will be presumed, in the absence of a showing to the contrary, that the parties to the contract intended to provide for a just result. The language they used does not necessarily mean that in case of loss the defendant should only be liable for such proportion of it as the amount it insured was to the total insurance on all of the property described in its policy, whether the concurrent insurance was on all of the property, or only a part of it. We think a permissible, and the correct, interpretation of the policy is that in case of a loss the defendant was not to be liable for a greater proportion of it than the amount of its policy bore to the total insurance on the property insured or destroyed. It is true, the words "described property," if not modified, refer to all of the property covered by the policy, and the phrase "covering such property" is equally comprehensive; but considered in their relation to the word "loss," and the purpose for which the policy was issued, we are of the opinion that they should be held to refer to property which should be injured or destroyed. See *Erb v. Insurance Co.*, 99 Iowa, 727 (69 N. W. Rep. 263); *Merrick v. Insurance Co.*, 54 Pa. St. 277. There was nothing in the evidence in conflict with the conclusion we reach. Hence

the district court properly directed a verdict for the plaintiff for the amount of the policy in suit and interest. Its judgment is therefore AFFIRMED.